47 So.2d 222

**JONES v. LIBERTY NAT. LIFE INS. CO.**

**3 Div. 906.**

Court of Appeals of Alabama.
Oct. 5, 1949.

Rehearing Denied Nov. 1, 1949.

B. E. Jones, of Evergreen, for appellee.

Edwin C. Page, Jr., of Evergreen, for appellant.

HARWOOD, Judge.

This cause is before us on pleadings only, the appellant, who was the plaintiff below having taken a non suit with leave to review in this court the ruling of the lower court sustaining the appellee's (defendant below) demurrers to certain replications filed by the plaintiff.

The plaintiff below, as beneficiary under a policy of life insurance issued on the life of Flossie Ellen Jones, brought suit on said policy. The complaint was in code form.

The defendant filed eight pleas, only six of which are now before the court, demurrers having been sustained to two of the pleas.

Plea 1 was the general issue.

Pleas Nos. 2, 3, and 4 all assert that at the time of the delivery of the policy sued on the insured was afflicted with cancer, and that this fact breached the following warranty in the policy: "This policy shall take effect on its date of issue provided the insured is then alive and in good health, but not otherwise."

Pleas 5 and 6 assert that a false answer of "no," made with intent to deceive, was given to a question in the application as to whether insured had ever had cancer, and that such false representation increased the risk of loss under said policy.

To these pleas the plaintiff filed nine replications.

Replications 2 to 7, inclusive, were filed separately and severally to all pleas, replications 8 and 9 only to pleas 2, 3, and 4.

These replications assert two matters in general.

Replications 2 and 3 set up in various language that at the time the application for said policy was executed W. W. Hagood, the agent of the defendant, acting within the line and scope of his authority, was informed that the insured was afflicted with cancer, and gave true answers to all questions asked and contained in the application; that neither the plaintiff nor the insured read or signed the application and were not informed of the answers placed therein by defendant's agent; and that the policy was subsequently delivered and the premiums paid thereon until the death of the insured.

Replications 7 and 8 are substantially the same as 2 and 3, except that they additionally allege that the policy was issued without a medical examination, and the application was not made a part of the policy; and that the application contains a statement showing that defendant's agent was entirely responsible for the selection of the risk.

The appellant, defendant below, demurred to replications 2 and 3 on the grounds, shortly summarized, that defendant's agent had no authority to waive, or to alter, the terms of the policy, and that his authority was limited to soliciting insurance, delivering policies, and collecting premiums.

Demurrer was filed to replication 7 on the same grounds as assigned to replications 2 and 3, and on the additional ground that this replication showed that defendant's agent was committing a fraudulent act in his own interest which would not be imputed to his principal, the defendant.

Demurrer to replication 8 contained the same grounds as the demurrer filed to replication 7, and the additional ground that it is not shown by replication 8 that any officer or agent with authority to issue said policy sued on was informed or had notice that the insured was suffering from cancer, and it fails to show that any such

officer possessing authority to alter the terms of the policy ever had notice that the insured was suffering from cancer.

Replications 5 and 6 allege that while the life insurance policy was in force and effect, the defendant, through an agent, took another application from defendant for a policy of burial insurance, and that the application for this burial policy showed on its face that the insured was an impaired risk for life insurance, and that such application for burial insurance was received in the home office of the defendant and a burial policy issued thereon, and the defendant for more than twelve weeks after the issuance of the burial policy continued to send agents to the plaintiff and collect premiums on the life insurance policy which is the basis of this litigation.

Replication 6 is substantially the same as 5 except that it alleges that the application for said burial policy on its face informed defendant of facts as to the health of Flossie Ellen Jones which would increase the risk of loss under a policy insuring her life, and which facts would tend to indicate that insured was not in sound health on the date of the issuance of the life insurance policy now in suit.

Replication 9 contains the same averments as replications 5 and 6, with the additional averment that the application for the burial policy showed that the insured, Flossie Ellen Jones had an age of 90 years at her next birthday, that none of the questions as to insured's physical condition were answered, but that endorsed across the agent's statement on said application for the burial policy were the words "Single premium" endorsed by defendant's agent P. L. Pace, showing on its face that the death of the insured was imminent, either because of insured's advanced age or because of her physical condition, and that defendant continued to collect premiums on the policy in suit for more than twelve weeks after such notice as contained in the application for the burial policy.

Defendant's demurrer to replication 9 assigned the same grounds as assigned in the demurrers to replications 5 and 6, and the additional ground the application for the burial policy did not show on its face that it was seeking insurance on the same person as the insured in the life policy sued on.

It might be noted here, in order to keep the record of the pleadings straight, that plaintiff's replication 4 avers that the application for the burial policy shows on its face that the insured was suffering from cancer. The lower court overruled the demurrer to this replication. It therefore remains in the case, but has no bearing other than reflecting the possible conclusion of the lower court that if the application for the burial policy actually contained such information, it may have amounted to notice to the company. After overruling of the demurrer the defendant filed an answer to said replication, setting up, among other things, that the policy sued on contained the following provision:

"(9) Entire Contract—This policy contains and constitutes the entire agreement between the Company and all other interested parties. All matter printed, written or endorsed on this and the following pages hereof are a part of this contract as fully as if recited over the signatures hereto. All statements made by the insured or on behalf of the Insured shall, in the absence of fraud, be deemed representations. No agent shall have the power or authority to change, alter or waive any of the terms or conditions, or any portion thereof of this policy, nor shall any change, alteration or waiver of any kind or manner be made except by endorsement signed by the President or Secretary."

The facts thus developed by the pleadings are to the effect that the plaintiff applied to the defendant for life insurance. In the application therefor, filled out by defendant's agent it was stated that insured was not suffering from cancer. The insured was afflicted with cancer at the time, and was so afflicted at the date of the delivery of the policy. Plaintiff's pleadings assert the defendant's agent was informed of this fact, and falsely stated it in the application which was not read over or signed by the insured, or by the plaintiff. The policy contained the provision it was to take effect on the date of its issue, provided the insured was on that date in sound

health. It further provided that the policy constituted the entire agreement between the parties, and that no agent had the power to alter the terms thereof, any change in such terms being made by endorsement signed by the President or Secretary.

The pleadings further show that after issuance of the above policy of life insurance the insured obtained, through a different agent of defendant, a burial policy. The application on which the burial policy was issued had written across the "Agent's Statement" the words "Single premium." After issuance of the burial policy the defendant, through its agent collected premiums on the life policy for some twelve weeks.

The appellant contends that the lower court erred in sustaining demurrers to his replications on two theories.

First: That under the allegations of plaintiff's replications 2, 3, 7, and 8, notice to the agent, while engaged in the business of his principal, the defendant, that the insured was suffering from cancer was imputed to the defendant who is bound by such imputed notice.

In Liberty National Life Insurance Co. v. Trammell, 33 Ala.App. 275, 33 So.2d 479, 482, considering a proviso in a policy identical to the proviso in the present policy we made the following observations:

"The policy contained the following provision: 'Effective Date—This policy shall take effect on its date of issue, provided the Insured is then alive and in sound health, but not otherwise.'

"Such a proviso in the policy is a binding part of the contract of insurance, and is a warranty within the meaning of Section 6, Title 28, Code of Alabama 1940. To avoid the policy the unsound health must be such as to increase the risk of loss. Brown-Service Ins. Co. v. Wright, 32 Ala.App. 578, 28 So.2d 318; Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16; Independent Life Insurance Co. v. Seale, 219 Ala. 197, 121 So. 714.

"If the insured, at the time of the issuance of this policy was suffering from a disease which increased the risk of loss, the warranty in the policy as to sound health was breached, regardless of whether the insured knew of the presence of such disease. Aetna Life Ins. Co. v. Norfleet, 232 Ala. 599, 169 So. 225; New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277. * * *

"Cancer is a disease which the courts judicially know increases the risk of loss and if existing at the time of the issuance of a policy containing a warranty as to sound health per se breaches such warranty. Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335; Aetna Life Insurance Co. v. Norfleet, supra; Life Ins. Co. of Virginia v. Mann, 28 Ala.App. 425, 186 So. 583."

In the case of Life Insurance Co. of Virginia v. Newell, supra, 223 Ala. 401, 137 So. 18, the policy contained a provision "That no obligation is assumed by the company prior to the date and delivery of the policy, nor unless on said date the insured is alive and in sound health." When the policy was delivered the insured was sick and died shortly. The disease was not of a nature which the court knew judicially would increase the risk of loss. The plaintiff attempted to overcome the provisions as to sound health at date of delivery by showing that the local agent who solicited the insurance took the application and delivered the policy knew of insured's illness prior to delivery and assured the father of the insured that the policy would be paid in case of death. The main insistence in the case was that there was a waiver of the stipulation touching sound health. In holding that no recovery could be had on the policy, Justice Bouldin wrote: "We need not consider the rules governing waiver and estoppel in general by agents of this class. We deal only with the case in hand. Where knowledge is brought home to the applicant by the contract itself that the agent is not authorized to deliver the policy and put it into effect because of the intervening sickness of the insured (in this case a sickness terminating in death on the following day), the rule in this state is that no attempted waiver on the part of the agent is binding on the principal, the insurer. North Carolina

Mutual Life Ins. Co. v. Kerley, 215 Ala. 100, 109 So. 755; Powell v. Prudential Ins. Co., 153 Ala. 611, 45 So. 208; Commonwealth Life Ins. Co. v. Wilkinson, 23 Ala. App. 561, 129 So. 300; Massachusetts Mutual Life Ins. Co. v. Crenshaw, 186 Ala. 460, 65 So. 65; Bankers' Credit Life Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23."

To like effect is Bankers' Credit Life Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23, 24, where, in connection with a question similar to the one now being considered our Supreme Court stated: "Passing over any question of fraud or collusion between the beneficiary and agent in seeking to put in force a policy under such circumstances, we must hold that an agent empowered to collect premiums and deliver policies is without power to waive the condition as to sound health, in the face of contractual stipulations to the contrary. North Carolina Mutual Life Ins. Co. v. Kerley, 215 Ala. 100, 109 So. 755; Powell v. Prudential Ins. Co., 153 Ala. 611, 45 So. 208; Massachusetts Mutual Life Ins. Co. v. Crenshaw, 186 Ala. 460, 65 So. 65; Commonwealth Life Ins. Co. v. Wilkinson, 23 Ala. App. 561, 129 So. 300."

To like effect are the doctrines enunciated in the following cases. First National Life Ins. Co. of America v. Rector, 225 Ala. 116, 142 So. 392; North Carolina Mutual Life Ins. Co. v. Kerley, 215 Ala. 100, 109 So. 755; Southern Life & Health Ins. Co. v. Davis, 33 Ala.App. 467, 34 So.2d 502; Brown Service Ins. Co. v. Childs, 34 Ala.App. 128, 38 So.2d 737.

■ We therefore conclude that under the doctrine of the above cases, applied to the facts of this particular case, which show the insured to have been afflicted with cancer at the date of issue of the policy sued on, the court correctly sustained the demurrers to replications 2, 3, 7, and 8.

Second: The appellant contends that the defendant, by reason of notice as to insured's condition resulting from information it should have gathered from the application for the burial policy, and thereafter collecting the premiums on the life policy, waived, or is estopped from assert-

ing the defense that the insured must have been in sound health on the date of the delivery of the life policy.

This contention is sought to be asserted in plaintiff's replications Nos. 5, 6, and 9.

As to the facts shown on the application for the burial policy replication 5 pertaining to insured's physical condition states that "said application showed on its face that the insured, Flossie Ellen Jones, was an impaired risk for life insurance." Replication 6 avers "that application on its face informed the defendant of facts and circumstances as to the health of Flossie Ellen Jones which would increase the risk of loss under a policy insuring her life." Replication 9 sets forth in substance that the application for the burial policy shows that the insured, Flossie Ellen Jones, was approaching 90 years of age, that questions as to whether insured had ever had cancer or tuberculosis were unanswered and that endorsed across the portion labeled "Agent's Statement," were the words "Single premium," the questions in such portion being unanswered.

In our opinion the action of the lower court in sustaining the demurrers to replications 5, 6, and 9 was proper for several reasons.

■ In the first place the averments that the facts contained in the application for the burial policy were such as should have put the defendant on notice are but conclusions of the pleader.

■ It is further our opinion that nothing contained in the application, as shown by the pleading, would justify our concluding that the trial judge was not warranted in concluding that the facts contained in such application were insufficient to put the defendant on notice that the Flossie Ellen Jones mentioned in the burial application, and described therein as approaching 90 years of age, was the same Flossie Ellen Jones covered by the life insurance policy; or even if the insured were the same person that the facts in the burial policy tended to disclose that Flossie Ellen Jones was then, or at any time afflicted with cancer, a disease which we judicially

know breaches the warranty as to sound health.

██ In addition, appellant's contention now being considered, would be contrary to the principle that a waiver or estoppel cannot create a primary right. This principle is enunciated in Equitable Life Assur. Soc. v. Langford, 234 Ala. 681, 176 So. 609, 611, in the following terms: "It is established by this court that one cannot create a primary liability and extend the coverage of a policy by waiver; but that a ground on which payment may be resisted may be waived by an officer or agent with authority to effectuate a waiver. However, to create a primary liability all the elements of a binding contract are essential. Protective Life Ins. Co. v. Cole, 230 Ala. 450, 161 So. 818. That is to say, that a waiver or an estoppel may not extend the coverage of the policy, but may only affect rights reserved therein. Such contracts for insurance are not to be so created under our statutes and rules of construction thereof."

To the same effect is the following statement to be found in Protective Life Ins. Co. v. Cole, 230 Ala. 450, 161 So. 818, 819:

"The substance of the doctrine of waiver as applied in the law of insurance is, that if the insurer, with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating the policy as in force, he will not thereafter be allowed to plead such facts to avoid his primary liability. Washburn Adm'r v. Union Central Life Insurance Co., 143 Ala. 485, 38 So. 1011; American Ins. Co. v. Millican, 228 Ala. 357, 153 So. 454.

"This doctrine, however, cannot be invoked by the insured to create such primary liability. To create such primary liability all the elements of a binding contract are essential. Belt Automobile Indemnity Ass'n v. Ensley Transfer & Supply Co., 211 Ala. 84, 99 So. 787; Great American Ins. Co v. Dover et al., 219 Ala. 530, 122 So. 658; American Ins. Co. v. Millican, supra."

Finding no error in the action of the lower court in its rulings on demurrers to the replications this cause is ordered affirmed.

Affirmed.

BRICKEN, P. J., not sitting.